UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RON CANEN and LOTTE CANEN,            )
                                       )
            Plaintiffs,                )
                                       )
       v.                              )   Case No. 3:10-cv-0081-PPS-CAN
                                       )
U.S. BANK NATIONAL ASSOCIATION         )
            *et al.*                   )
                                       )
            Defendants.                )

## OPINION AND ORDER

Plaintiffs Ron and Lotte Canen have brought a lawsuit asserting eight separate counts against at least eight defendants. Their specific claims vary, but they all appear to involve a 2004 transaction whereby the Canens took out a loan and secured that debt by mortgaging their house. The Canens are proceeding *pro se*, and their complaint is not entirely clear, but they generally seem to believe that various defendants committed wrongdoing by (a) improperly documenting and processing the loan, (b) selling it to investors, (c) paying a fee to mortgage servicing companies, and (d) even by loaning them the money in the first place.

This is not the first time that the Canens have been to court in the past several years. Most notably, they were parties to a state court foreclosure action that was commenced in 2005 and a Chapter 7 bankruptcy proceeding that began in 2009. That prior involvement in the court system is fatal to their claims here, for the reasons explained below.

First, three of the counts ask me to rescind their long-since foreclosed loan. This would have the practical effect of reversing the 2009 state court foreclosure action. As discussed below, I don't have the jurisdiction do that under the *Rooker-Feldman* doctrine. So those counts

1

are dismissed for lack of subject matter jurisdiction.

Second, during the Canens' previous bankruptcy proceedings, they were asked to list all existing and potential pre-bankruptcy claims that might benefit their estate. They failed to identify any of the claims included in this lawsuit, even though all of them seem to have accrued long before 2009. And this does not appear to be the result of a post-bankruptcy discovery – in fact, the Canens themselves have pointed me to evidence suggesting that they were contemplating legal action at least as early as 2008, and certainly by May 19, 2009, when they filed for the Chapter 7 bankruptcy that was finally successful in discharging their debts.

The Defendants argue that those bankruptcy proceedings operate to strip the Canens of standing to bring their claims now. I should note that I'm not sure that's right as a technical legal matter. Although some courts appear to construe this sort of scenario (*i.e.*, a debtor bringing pre-bankruptcy claims that were not identified in the since-closed bankruptcy proceedings) as a standing defect, I think the better view is that their claims are barred under principles of judicial estoppel. But in any event, it's really neither here nor there; both routes lead to a dead end for the Canens.

Therefore, as explained more fully below, Defendants' Motions for Summary Judgment are **GRANTED** with respect to Counts III, IV, V, VI and VII. Counts I, II and VIII of the Complaint are **DISMISSED** *sua sponte* for lack of subject matter jurisdiction. Defendants' Motions for Summary Judgment are **DENIED AS MOOT** with respect to those claims. Finally, the Canens' Motion to Deny Defendants Motion for Summary Judgment is **DENIED** as well.

## BACKGROUND

The Canens are residents of Elkhart, Indiana. (DE 16 at 8.) They took out an adjustable

rate mortgage on a house in April 2004. (*Id.* at 9-11.) The Defendants are a collection of banks, legal entities ostensibly created for the purpose of holding mortgage-related debt, mortgage servicing companies, and private individuals. (*Id.* at 3-7.) All of the Defendants have some connection – however tenuous – to the Canens' mortgage (*e.g.*, they issued it, bought it, sold it or serviced it). (*Id.*)

It appears that the Canens stopped paying their monthly mortgage payment shortly after taking out the loan in 2004, yet incredibly, and almost beyond comprehension, it appears that the Canens remain in the home some eight years later. (DE 124 at 1.) Here's the history: the Canens' creditors initiated foreclosure proceedings in May 2005 (DE 135-4), and an Elkhart County Superior Court entered a default judgment and decree of foreclosure on October 3, 2007. (DE 135-7.) The Canens have somehow managed to avoid being removed from the home through a wily litigation strategy. First, in July 2005, the Canens filed a Chapter 13 bankruptcy petition in this district; it was ultimately dismissed without prejudice in 2007. (DE 135-5.) The Canens then filed another Chapter 13 bankruptcy petition in the same court in February 2008. (DE 135-8.) It was dismissed in June 2008. (*Id.*) The Canens filed a third Chapter 13 petition in September 2008, and it was dismissed one month later. (DE 135-9.) Lotte Canen filed a Chapter 13 petition on her own behalf one month after that, in November 2008. (DE 135-10.) A few weeks later it was converted to a Chapter 7 bankruptcy proceeding. (*Id.*) This case was closed in March 2009 without a discharge. (*Id.*) In May 2009, the Canens jointly filed a Chapter 7 bankruptcy petition. (DE 135-12.) This one finally stuck, and the bankruptcy court entered a discharge in August 2009. (DE 135-14.) Notably, the Canens' bankruptcy petition failed to disclose the existence of any contingent or unliquidated claims. (DE 135-13.)

3

The Canens responded to the termination of their Chapter 7 bankruptcy proceeds by filing this case. (DE 1.) Their claims are hard to decipher, but they generally seem to allege that various of the Defendants committed wrongdoing by (1) failing to disclose to them that they couldn't afford their adjustable rate loan, (2) improperly processing or documenting the mortgage transaction, and (3) selling the mortgage after it was issued. Specifically, the Canens audacious complaint brings the following counts:

(1) A Truth in Lending Act claim, alleging that various Defendants provided noncompliant Notices of Right to Cancel and otherwise "hid" the identity of the true lender;

(2) a Quiet Title claim, alleging that the Canens have a superior title claim to anyone claiming an ownership interest in their foreclosed residence;

(3) four Real Estate Settlement Procedures Act claims against various Defendants alleging (i) that money paid to a mortgage servicing entity was an improper "kickback," (ii) that it constitutes an unearned charge, (iii) that various Defendants failed to provide the Canens with a compliant itemized statement, and (iv) that various Defendants failed to respond to a Qualified Written Request;

(4) a Fair Debt Collection Practices Act claim alleging that various Defendants submitted a noncompliant and false notice seeking to collect debt, and that the Defendants continued to seek repayment of the debt after the Canens notified them that it was disputed;

(5) a Fair Credit Reporting Act claim against various Defendants alleging that they made false statements to credit bureaus;

(6) a conspiracy claim alleging that various Defendants conspired to commit fraud by encouraging the Canens to take out a loan that they could not service;

(7) a conspiracy claim alleging that various Defendants formed a mortgage servicing entity to shield their identities and involvement in a massive scheme to defraud mortgage customers; and

(8) a fraudulent inducement claim alleging that various Defendants misled the Canens into taking out a mortgage that they could not repay.

(DE 16 at 19-34.)

I'm not going to get further into the specifics of these individual claims, for two reasons. First, given the relative incoherence in the Canens' Complaint, I don't fully understand some of them. Second, and much more importantly, it doesn't matter for the purposes of my decision. All of these claims seem to trace back to the events surrounding the Canens' initial 2004 mortgage transaction and their (purported) immediately subsequent attempts to cancel that loan. The fact that this time period significantly predates the Canens' 2009 bankruptcy proceedings effectively bars them from bringing all of their claims now, regardless of their substance.

**ANALYSIS**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id.* at 255. But the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

Furthermore, Defendants have asked me to dispose of at least some of the Canens' claims pursuant to the *Rooker-Feldman* doctrine, which generally prevents federal courts (other than the Supreme Court) from subjecting a state court judgment to appellate review. *See Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509-10 (7th Cir. 1996) (applying *Rooker-Feldman* doctrine). This doctrine is jurisdictional in nature. *See Commonwealth Plaza Condominium Ass'n v. City*

5

*of Chicago*, 693 F.3d 743, 745-46 (7th Cir. 2012). That means that if *Rooker-Feldman* applies to any of the Canens' claims, I must dismiss those counts – and not grant summary judgment – because I lack the jurisdiction to hear them. *See Crawford v. Countrywide Home Loans Inc.*, Nos. 09 CV 247, 09 CV 295, 2011 WL 3875642, at *6 (N.D. Ind. Aug. 31, 2011) (explaining the impact of the *Rooker-Feldman* doctrine on the summary judgment/dismissal question).

**I.**

I'll start with *Rooker-Feldman*. As I just mentioned, it precludes federal courts other than the Supreme Court from reviewing state court decisions. *See Kamilewicz*, 92 F.3d at 509-10. The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 590 (7th Cir. 2005) (*quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Instead, "[a] litigant dissatisfied with the decision of a state tribunal must appeal rather than file an independent suit in federal court." *Alpern v. Lieb*, 38 F.3d 933, 934 (7th Cir. 1994). The doctrine applies to injuries that result from, or are "inextricably intertwined" with, a state court judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).

At least two – and probably three – of the Canens' counts fall within *Rooker-Feldman*'s scope. Counts I (TILA) and II (Quiet Title) explicitly seek to rescind the Canens' loan that was the subject of the prior foreclosure action. Count VIII alleges fraudulent inducement, which under Indiana law gives a successful claimant the choice between rescinding the contract in question, or affirming it and seeking damages. *See Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 45 n.6 (Ind. Ct. App. 2009); *Lightning Litho, Inc. v. Danka Indus.*, 776

6

N.E.2d 1238, 1241 (Ind. Ct. App. 2002). The Canens do not specify which type of relief they are seeking with respect to this claim. However, their request for rescission in the first two counts would be irreconcilable with an award of damages, which requires the affirmance of the disputed contract. Furthermore, a fraudulent inducement damages award usually forces the defendant to make good on his or her representations. *See Lightning Litho*, 776 N.E.2d at 1242. The Canens essentially claim that the Defendants misrepresented their ability to qualify for and repay their loan, and I have no idea what the Defendants could do to "make good" on that (alleged) misstatement. Since a damages theory seems both inconsistent with their other claims and practically impossible to formulate, I'll assume that Count VIII seeks rescission as well.

That request for relief can only be seen as inextricably intertwined with the Canens' prior foreclosure proceedings. Suppose for a moment that the Canens prevail on these claims. What would happen? Well, the 2004 loan transaction would need to be unwound. The Canens would pay the money back to the appropriate Defendants, and the Defendants would lose their (now executed) security interest in the Canens' house, and then they presumably would need to return the deed for that property back to them. But the precise issue decided in the foreclosure action was that one or more of the Defendants *had* a valid security interest in the house and *could* take possession of it upon the Canens' nonpayment. In other words, rescinding the loan effectively requires me to vacate the state court foreclosure judgment, which is exactly the sort of action the *Rooker-Feldman* doctrine forbids. *See Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004).

Therefore, the counts in the Canens' Complaint seeking rescission ask me to do

something that I don't have jurisdiction to do. Those claims are dismissed accordingly.[1]

**II.**

Now I'll turn to the Defendants' standing argument. They contend that when the Canens filed for Chapter 7 bankruptcy in 2009, all of their pre-bankruptcy claims – including those related to the 2004 loan – became the property of their estate. Thus, the argument goes, only the trustee (and not the Canens themselves) has standing to bring those claims, even after the bankruptcy has closed.

The Defendants cite an opinion from this district reaching that conclusion in a similar situation. *See Crooks v. Household Finance Corp. III*, Cause No. 3:11-CV-221 RM, 2011 WL 3875803 (N.D. Ind. Aug. 30, 2011). There, Judge Miller held that when a debtor declared Chapter 7 bankruptcy, he transferred his then-existing claims involving his prior foreclosure to the trustee and thus lacked standing to assert them himself. *Id.* at *1. The court dismissed the lawsuit pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

The ultimate result in *Crooks* is surely correct, but with all respect to Judge Miller, I'm not sure that applying a standing analysis is the right way to dispose of this sort of case. Don't

---

[1] The remaining claims generally ask for statutory damages or penalties under a variety of theories. It's hard to tell, but it seems like the Canens are alleging wrongdoing independent of the prior state court foreclosure action. If that's the case, then these claims would not be foreclosed by *Rooker-Feldman*. *See Jones v. Brennan*, 465 F.3d 304, 305-06 (7th Cir. 2006) (emphasizing that *Rooker-Feldman* doctrine is "inapplicable when the plaintiff is not attacking a state court judgment"); *Burke v. Johnston*, 452 F.3d 665, 667-70 (7th Cir. 2006); *Zurich Am. Ins. Co. v. Superior Court for Cal.*, 326 F.3d 816, 822 (7th Cir. 2003) (noting that *Rooker-Feldman* doctrine does not apply when federal claim does not depend on determination that state court erred in deciding previous action). In any event, as I'll discuss immediately below, these remaining claims are barred on judicial estoppel grounds, so whether or not they are also barred by *Rooker-Feldman* is not outcome determinative.

get me wrong – Seventh Circuit authorities are unambiguous that only a Chapter 7 trustee (and not a debtor) will have standing to bring a pre-bankruptcy claim while the bankruptcy case remains open. *See Matthews v. Potter*, 316 Fed. Appx. 518, 521(7th Cir. 2009) ("The trustee may abandon a legal claim, but until then only the trustee, as the real party in interest, has standing to sue."); *see also Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006). But it's not so clear that this result should apply once the bankruptcy proceedings have terminated. Some courts say that a claim remains with the estate into perpetuity unless affirmatively abandoned by the trustee. *See, e.g., Nehmelman v. Penn Nat. Gaming, Inc.,* 790 F. Supp. 2d 787, 791 (N.D. Ill. 2011); *Calvin v. Potter*, No. 07 C 3056, 2009 WL 2588884, at *2 (N.D. Ill. Aug. 20, 2009). Others disagree, and view the closing of the bankruptcy estate to be an act that effectively constitutes abandonment. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006); *see also Williams v. Hainje*, 375 Fed. Appx. 625, 627-28 (7th Cir. 2010). This doesn't mean that a Chapter 7 debtor can "hide" pre-bankruptcy claims when he or she files, wait until his or her case is closed, and then pursue those claims. It's just that a different doctrine – judicial estoppel – will apply to bar the pre-bankruptcy claims in that situation. *Id.*

The Canens' claims appear to date back to 2004 or 2005, and their (finally successful) Chapter 7 bankruptcy closed in 2009, so I'm directly confronted with the question of which of the doctrines of standing or judicial estoppel is implicated in this case. I think the better view is that the Canens' lawsuit is barred by the latter of these. That's because the two main Seventh Circuit decisions addressing standing and judicial estoppel in this context (*Biesek* and *Cannon-Stokes*) seem to hold – especially when taken together – that the closing of a bankruptcy estate is the key dividing line that separates when each of the two theories is appropriate.

9

In *Biesek*, a railroad employee was embroiled in FELA litigation with his employer when he declared Chapter 7 bankruptcy. *See* 440 F.3d at 411. He attempted to resume those claims while his bankruptcy was ongoing. *Id.* at 412. The district court dismissed the lawsuit on judicial estoppel grounds, and he appealed. *Id.* The Seventh Circuit held that it was inappropriate for the court to use judicial estoppel to dispose to the lawsuit. It's not that the court thought that the plaintiff should be allowed to proceed – instead, it concluded that the ongoing bankruptcy proceedings meant that the trustee was the real party in interest for those claims, so that the plaintiff was not the proper party to raise them. *Id.* at 413-14. In fact, the court criticized the application of judicial estoppel principles when a bankruptcy proceeding is still ongoing, noting that it would hurt the bankruptcy creditors, who otherwise might benefit from a valid claim. *Id.* Therefore, the court affirmed the dismissal below, albeit on those different, standing-based[2] grounds. *Id.*

*Cannon-Stokes* was decided by the Seventh Circuit[3] only a few months later. The court noted that in *Biesek* it had been able to avoid the issue of judicial estoppel because the bankruptcy was still open. *See Cannon-Stokes*, 453 F.3d at 448. It then contrasted this scenario with the matter then before it, noting that the *Cannon-Stokes* plaintiff's bankruptcy had long since closed, and thus neither the trustee nor the creditors had any interest in her claims (*i.e.*, they had abandoned them). *Id.* As a result, the court was forced to turn to the issue of judicial

---

[2] *Biesek* actually does not use the term "standing," though subsequent cases from the Seventh Circuit and other district courts have construed it to mean that a debtor will lack standing to pursue a pre-bankruptcy claim during the pendency of his or her bankruptcy proceedings. *See, e.g., Matthews*, 316 Fed. Appx. at 521; *Jaeger v. Clear Wing Prods., Inc.*, 465 F. Supp. 2d 879, 883 (S.D. Ill. 2006).

[3] In fact, the *Biesek* and *Cannon-Stokes* opinions were written by the same judge.

estoppel, which – at least in the particular context – was a matter of first impression for the Seventh Circuit. The court went on to hold that it applied to bar the plaintiff's lawsuit. *Id.* at 448-49.

I read these two 2006 decisions as establishing the following rule: when a bankruptcy proceeding is open, standing principles operate to bar a debtor from pursuing a pre-bankruptcy claim. In contrast, if the bankruptcy case has been closed, then the trustee will be deemed to have abandoned the claim, and the judicial estoppel doctrine may apply, provided that its various elements are met. This seems consistent with subsequent Seventh Circuit decisions addressing post-bankruptcy lawsuits. *See, e.g., Williams*, 375 Fed. Appx. at 627.

The key question in this case, then, is whether the doctrine of judicial estoppel applies to the facts before me. "Broadly speaking, judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation." *Id.* (*citing Zedner v. United States*, 547 U.S. 489, 504 (2006) *and Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004)). In this bankruptcy context, that principle means that debtors who receive a discharge by hiding or concealing potential legal claims cannot wait until the bankruptcy ends and then pursue them. *See Cannon–Stokes*, 453 F.3d at 448; *Williams*, 375 Fed. Appx. at 627.

There are three main elements that must be satisfied for the doctrine of judicial estoppel to apply:

> ...[F]irst, that "a party's later position must be clearly inconsistent with its earlier position;" second, that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and third, that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*In re Knight–Celotex, LLC*, 695 F.3d 714, 721-22 (7th Cir. 2012) (*quoting New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)); *accord Lujano v. Town of Cicero*, No. 07 C 4822, 2012 WL 4499326, at *11 (N.D. Ill. Sept. 28, 2012).

Resolving each of these elements in this case requires me to answer one main question – did the Canens know about their potential mortgage-related claims during the pendency of their 2009 bankruptcy proceedings? If the answer is yes, then (1) failing to disclose those claims is clearly inconsistent with their current lawsuit, (2) allowing the Canens to proceed now would imply that the bankruptcy court had been misled by their failure to disclose, and (3) it would be unfair to allow the Canens to assert claims that they previously denied having in order to get a bankruptcy discharge. If the Canens didn't know about those claims, however, then none of that applies. And indeed, this issue of whether a post-bankruptcy debtor knew of the undisclosed pre-bankruptcy claims usually is central to the judicial estoppel determination. *See, e.g., In re Ortiz*, 477 B.R. 714, 722-23 (E.D. Wis. 2012); *see also* Benjamin J. Vernia, Annotation, *Judicial Estoppel of Subsequent Action Based on Statements, Positions, or Omissions as to Claim or Interest in Bankruptcy Proceeding*, 85 A.L.R.5th 353 (2007) (cataloguing cases at § 12[e]).

So were the Canens aware of their mortgage-related claims when they declared bankruptcy in 2009? In their response to the pending summary judgment motions, they claim that they didn't fully know about their mortgage-related claims until after the bankruptcy process was over. (DE 155 at 21.) There are at least two problems with this bald assertion. First, when opposing summary judgment, it's not enough to announce an important fact in the briefing – the party needs to point me to evidence establishing that fact, though that evidence can be as simple as a self-serving affidavit. *See* Fed. R. Civ. Pro. 56(e); *Thomas v. Christ Hosp. & Med. Ctr.*, 328

F.3d 890, 894 (7th Cir. 2003). But the Canens are proceeding *pro se*, so I'll cut them some slack and move past that defect.

The second (and far more substantial) problem with their unsupported statement that they didn't know they had any potential mortgage-related claims is that it's completely contradicted by the evidence produced during the summary judgment briefing, including evidence provided by the Canens themselves. Specifically, in their responses to the motions for summary judgment, the Canens produced two pieces of correspondence – an "Urgent Letter" dated May 12, 2009 disputing that the Canens owed anything on their since-foreclosed mortgage and threatening future action pursuant to RESPA, and a letter dated July 8, 2008 from the Canens to Meritage stating that this mortgage had been satisfied in full due to "numerous" sales. (DE 151 at 3-6.[4]) These letters – which predate their Chapter 7 bankruptcy filing by one week and ten months, respectively – unmistakably allude to many of the purported legal theories that the Canens assert in their lawsuit.

The documents are incontrovertible evidence that by May 2009 the Canens must have been fully aware of the facts giving rise to their current lawsuit, as well as the notion that they might have a cognizable legal claim (however unfounded and farfetched) as a result of them. Perhaps they did not know the name of every single count that they ultimately would bring by that point, but they clearly suspected actionable wrongdoing associated with their 2004 mortgage transaction. This conclusion is only underscored by the fact that the Canens submitted a motion in the long-since-terminated state court foreclosure action asserting many of their legal

---

[4] The Canens submitted four identical copies of these documents. (DE 151; DE 152; DE 153; DE 154.) For the sake of brevity, I will cite only the first of them.

arguments about a month after the termination of their bankruptcy proceedings. (DE 135-15.) That timing seems awfully suspicious to me – it makes it look like the Canens were biding their time until their Chapter 7 case closed, at which point they planned to raise their dormant mortgage-related claims.

I therefore agree that the Canens' failure to disclose potential mortgage-related claims as assets during the entirety of their bankruptcy proceedings – when it's pretty clear that they were contemplating legal action at least ten months before declaring bankruptcy – is fatal to their current lawsuit. I disagree with the Defendants about *why* the omission is dispositive; I think that the doctrine of judicial estoppel is the impediment to the Canens' lawsuit, and not standing. But that's a technical point. The bottom line is that the Canens cannot proceed.[5]

## CONCLUSION

Therefore, for the reasons explained above, Counts I, II and VIII of the Canens' Complaint are **DISMISSED** *sua sponte* for lack of subject matter jurisdiction. The various pending motions for summary judgment (DE 123; DE 126; DE 129; DE 132) are **DENIED AS MOOT** with respect to these counts. Those motions for summary judgment are **GRANTED** with respect to Counts III, IV, V, VI and VII of the Canen's Complaint. The Canens' Motion to Deny Defendants' Motion for Summary Judgment (DE 155) is **DENIED**. Because this ruling disposes of all the issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of

---

[5] Because the Canens cannot proceed with any of their claims under one or both of the *Rooker-Feldman* doctrine or the doctrine of judicial estoppel, there is no need for me to address the remaining arguments raised by Defendants. However, I'll note that many of them seem well-founded. The statute of limitations arguments are particularly persuasive for the same reason discussed above – the Canen's current claims all seem to arise from events that occurred in 2004 and 2005, and the Canens appear to have been aware of them by 2008 at the latest.

Defendants stating that the Canens are entitled to no relief on their Complaint. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

    **SO ORDERED**.

    ENTERED: December 14, 2012.

    s/ Philip P. Simon
    PHILIP P. SIMON, CHIEF JUDGE
    UNITED STATES DISTRICT COURT